IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kevin Trudeau and Direct Response )
Associates LLC, )
 )
                Plaintiffs, )
 )
   v. ) No. 04 C 7165
 )
George Lanoue et al., )
 )
                Defendants. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for summary judgment, Defendants' motion for summary judgment, and Plaintiffs' motion to strike. For the reasons stated below, we deny Defendants' motion for summary judgment and grant Plaintiffs' motion to strike. We also grant in part and deny in part Plaintiffs' motion for summary judgment.

## BACKGROUND

Plaintiffs Kevin Trudeau ("Trudeau") and Direct Response Associates LLC allege that Trudeau is a widely-published author and has appeared on or produced hundreds of infomercials. Plaintiffs contend that, due to Trudeau's notoriety, the

names "Trudeau" and "Kevin Trudeau" have become to be associated with the products that Plaintiffs create and distribute and that Trudeau's name has significant value. Plaintiffs allege that Defendants used the domain names "trudeau.com" and "kevintrudeau.com" on the internet to sell and promote products and that Plaintiffs have not given permission to Defendants to use the trademarks. According to Plaintiffs, on the Trudeau.com website there is even a picture of Trudeau and the phrase "as seen on TV." Defendants have also allegedly registered a variety of other names associated with Trudeau such as "trudeau.us" and "trudeau.biz."

Plaintiffs brought the instant action and include in their amended complaint a trademark infringement claim under 15 U.S.C. § 1125 of the Lanham Act (Count I), a cybersquatting claim alleging a violation of 15 U.S.C. § 1125(d) of the Anti-cybersquatting Consumer Protection Act (Count II), a cyberpiracy claim alleging a violation of 15 U.S.C. § 1129 ("Section 1129") (Count III), a claim alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* ("CFDBPA") (Count IV), a claim alleging a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 501/1 *et seq.* ("UDTPA") (Count V), a claim alleging a violation of the Illinois Right of Publicity Act, 765 ILCS 1175/1 *et seq.*("Publicity Act") (Count VI), a common law trademark infringement claim (Count VII), and a common law unfair competition claim (Count VIII). Defendants have asserted a fraudulent misrepresentation counterclaim, a negligent misrepresentation counterclaim, and an acquiescence counterclaim.

Plaintiffs have moved for summary judgment on the counterclaims and Defendants have moved for summary judgment on Plaintiffs' claims.

**LEGAL STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

**DISCUSSION**

I. Plaintiffs' Motion to Strike

Plaintiffs contend that Defendants did not contest the strength and

protectability of Plaintiffs' trademark in Defendants' memorandum in support of summary judgment and that Defendants first introduced such an argument in their reply brief. A party may not introduce novel arguments in its reply brief. *See Aliwoli v. Gilmore,* 127 F.3d 632, 635 (7th Cir.1997)(quoting *United States v. Feinberg,* 89 F.3d 333, 340-41 (7th Cir.1996) for statement that "[t]he reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court."). In the instant action, Defendants contend that their arguments in their reply concerning the strength and protectability of Plaintiffs' trademark were simply responding to arguments made by Plaintiffs. However, Defendants go far beyond the scope of any arguments presented in Plaintiffs' answer brief. There is also no mention of Defendants' position questioning the strength and protectability of Plaintiffs' trademark in Defendants' memorandum in support of their motion for summary judgment other than in a footnote in which Defendants indicated that they do not waive Plaintiffs' burden to demonstrate that they possess a protectable trademark. (D SJ Mem. 5 n.4). Yet in Defendants' reply brief, Defendants have included an entire section arguing that Plaintiffs do no have protectable trademarks. (Reply 4-5). Defendants' introduction of the new argument in its reply brief was improper since it denied Plaintiffs an adequate opportunity to respond to the argument. Therefore, we grant Plaintiffs' motion to strike and strike section III of Defendants' reply brief to Defendants' motion for summary judgment.

II. Defendants' Motion for Summary Judgment

### A. Trademark Claims and Related Analyses (Counts I, IV, V, VII, and VIII)

Defendants argue that Plaintiffs authorized Defendants to use Plaintiffs' products and trademarks. Defendants also argue that there is no likelihood of confusion among consumers and that Defendants are protected from liability by the first-sale doctrine.

### 1. Authorization to Use Trademarks

Defendants contend that they were impliedly authorized by Plaintiffs to sell Trudeau products. Pursuant to Local Rule 56.1, Plaintiffs admit that Defendant George Lanoue ("Lanoue") and Trudeau have known each other for ten years. ( R D SF 1). Defendants contend in their statement of facts that Lanoue and Trudeau have had business relations for ten years and that Lanoue has purchased and distributed Trudeau's products. (D SF 2). Plaintiffs admit that Lanoue and Trudeau had a business relationship for ten years but state that they ceased selling Trudeau products to Lanoue in September 2004. ( R D SF 2). Defendants also argue that George Lanoue presented a joint venture proposal to Trudeau, that Lanoue proposed selling to Trudeau Lanoue's business, and that Trudeau encouraged Lanoue to do what he wanted to do on the internet. (D SF 55-57). Trudeau denies that he ever told any of Defendants that they could register or use any part of his name or the name of a

5

product that he created. ( R SF 57). Trudeau also denies that he ever encouraged Defendants to engage in any of the activities that are the subject of this suit. ( R SF 58).

Defendants also contend that Trudeau met with Lanoue in 1997 in San Jose, California, and discussed "www.trudea.com" with Trudeau. (D SF 62-64). Trudeau claims that he does not recall meeting with Lanoue and that no such discussion took place. ( R SF 62-64). Trudeau does admit that he knew about Defendants' usage of the domain name "www.trudeau.com" for at least five years prior to complaining about its usage. ( R SF 59). However, that admission is not sufficient evidence to enable the court to infer as a matter of law that Plaintiffs impliedly authorized Defendants to use Trudeau's name. Whether such an inference is reasonable must be left to the trier of fact.

### 2. Likelihood of Confusion

Defendants argue that there is not a likelihood that their actions caused confusion among consumers. For a trademark infringement claim, a plaintiff is required to show a "likelihood of confusion as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers." *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (7th Cir. 1992). The determination of whether there is a "likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective

purchasers of the goods or services of the parties." *McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1167-68 (7th Cir. 1986)*; see also S Industries, Inc. v. Diamond Multimedia Systems, Inc.*, 991 F.Supp. 1012, 1017 (N.D. Ill. 1998)(stating that "[i]n effect, § 1125 is the federal codification of traditional common law trademark rights").

Defendants contend that there was no confusion among consumers because, during the time in question, Defendants and Plaintiffs were not competitors. Defendants contend that Plaintiffs relied on distributors to sell products directly to consumers and that Defendants were just such authorized distributors. Even if Defendants correctly described the products they were selling as Trudeau's products and did not mislead consumers as to the source of the products, as a reseller of the products, Defendants were "obligated to do so in a manner that is not likely to cause confusion or imply that [Defendants were] associated with the manufacturer." *Bernina of America, Inc. v. Fashion Fabrics Intern., Inc.*, 2001 WL 128164, at *2 (N.D. Ill. 2001). We have not been presented with sufficient evidence by Defendants to conclude as a matter of law that Plaintiffs cannot satisfy the consumer confusion element. The mere fact that Defendants were at one time distributors for Plaintiffs or were selling Trudeau products at the time in question does not enable them to avoid liability. It is possible that Defendants' conduct mislead consumers concerning the status of their relationship with Plaintiffs. Plaintiffs have also pointed to evidence that shows that there was possibly consumer confusion

concerning Trudeau's affiliation with Defendants such as the usage of the phrase "As Seen on TV" and the use of his photograph on Defendants' websites. Trudeau also testified at his deposition concerning experiences he had with people that thought that Defendants' websites were Trudeau's websites and show that consumers were confused regarding his affiliation with Defendants ( Tr. Dep. 160). As is indicated above, the determination of whether there is a likelihood of confusion is a question of fact, and the evidence is such that the determination in this action must be left to the trier of fact.

### 3. First-Sale Doctrine

Defendants also argue that they are protected from liability by the first sale doctrine. Under the first-sale doctrine "a trademarked-product reseller" is protected "from infringement liability when use of the trademark is only 'incidental to permissible resale and accompanying advertisement of trademarked products,' but the doctrine is not available to uses that 'create confusion beyond mere resale . . . .'" *Caterpillar Inc. v. Telescan Technologies, L.L.C.*, 2002 WL 1301304, at \*5 (C.D.Ill. 2002)(quoting *Enesco Corp. v. K's Merchandise Mart Inc.,* 56 U.S.P.Q.2d 1583 (N.D.Ill.2000)); *see also Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766 (6th Cir. 2005)(quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073, 1076 (9th Cir. 1980) for the proposition that "[t]he first-sale doctrine provides that 'a

purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act'").

In the instant action, Plaintiffs do not contend that Defendants were authorized distributors at the time in question and that Defendants merely stocked and sold Plaintiffs' products. Plaintiffs deny that Defendants were authorized distributors of Plaintiffs' products and contend that Defendants' usage of Trudeau's name and likeness in unison with the sale of goods created confusion among consumers regarding Defendants' affiliation with Trudeau. Thus, we cannot find as a matter of law that Defendants are protected by the first-sale doctrine, and, based on all of the above, we deny Defendants' motion for summary judgment on the trademark claims (Counts I and VII).

### 4. Related Claims (Counts IV, V, and VII)

Defendants correctly point out that the claims in Counts IV, V, and VIII would be impacted by our trademark infringement claims analysis. Count IV is a claim alleging a violation of the CFDBPA which must "be resolved according to principles set forth under the Lanham Act." *D 56, Inc. v. Berry's Inc.*, 955 F.Supp. 908, 920-21 (N.D.Ill.,1997)(stating that "[u]nder Illinois law, claims under the ICFDBPA and the IDTPA are to be resolved according to principles set forth under

the Lanham Act").

Count V is a claim alleging a violation of the UDTPA. A plaintiff bringing a UDTPA claim must show "a likelihood of confusion," and the term "'[l]ikelihood of confusion' has the same meaning in unfair competition cases under the Deceptive Trade Practices Act as it has in traditional infringement cases." The UDTPA codified the common law unfair competition claim and thus if a UDPTA claim fails to prevail, an unfair competition claims must also fail to prevail. *Mars, Inc. v. Curtiss Candy Co.*, 290 N.E.2d 701, 704 (Ill. App. Ct. 1972). Therefore, since the claims in Counts IV, V, and VIII are intertwined with the analysis of the trademark infringement claims, we deny Defendants' motion for summary judgment on Counts IV, V and VIII for the reasons explained above in connection with the trademark infringement claims.

      B. Cybersquatting Claim (Count II)

Defendants argue that they should prevail as a matter of law on the cybersquatting claim. In order to prevail on a cybersquatting claim, a plaintiff must show, among other elements, that the defendants had a "bad faith intent to profit from the mark." 15 U.S.C. § 1125 (d). In determining whether a person had "bad faith intent to profit from the mark," a court may consider factors such as "the extent to which the domain name consists of the legal name of the person or a name that is

otherwise commonly used to identify that person; . . . the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; . . .[and] the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site . . . ." 15 U.S.C. § 1125 (d)(1)(B)(i). In addition, there is no bad faith if "the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125 (d)(1)(B)(ii).

In the instant action, Plaintiffs point to evidence in this action that could indicate bad faith by Defendants. Defendants have failed to present to the court any bonafide non-commercial reason for the use of Trudeau's name. None of the individual Defendants or employees of the corporate Defendants contend that their legal name is "Trudeau." Defendants admittedly had dealt with Trudeau in the past, knew the notoriety of his name, and should logically have known that any use of his name could have deceived the public into believing that they were licensed distributors for Trudeau. Also, according to the evidence pointed to by Plaintiffs, Defendants attempted to register "trudeau.com" and "kevintrudeau.com" as federal trademarks and their applications were rejected, which should have provided some notice to Defendants that they do not have the right to use Trudeau's name. Thus, Defendants' contention that there is a complete absence of evidence of bad faith

intent is incorrect and Defendants are not entitled to a finding as a matter of law on the issue of bad faith intent. We are not finding that Defendants acted in bad faith at this juncture, and in any event, Plaintiffs are not moving for summary judgment on that issue. Whether or not Defendants had bad faith intent is a highly fact intensive issue and must be left to the trier of fact. Therefore, we deny Defendants' motion for summary judgment on the Cybersquatting claim (Count II).

### E. Cyberpiracy Claims (Count III)

Defendants move for summary judgment on the cyberpiracy claim (Count III). Section 1129 provides the following:

> (A) Civil liability
> Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, with the specific intent to profit from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.

15 U.S.C. § 1129 (a). Defendants argue that there is a lack of evidence concerning their intent to sell Trudeau-related domain names to a third party. However, according to evidence pointed to by Trudeau, Defendants offered to sell "kevintrudeau.com" domain name to Trudeau's agent. Trudeau also denies that he ever gave any authorization to Defendants to use any domain names that contained his name or the name of his products. Thus, there are disputed issues of fact in connection with the cyberpiracy claim and we deny Defendants' motion for summary judgment on the cyberpiracy claim.

12

### F. Publicity Act Claim (Count VI)

Defendants argue that they should prevail on the Publicity Act claim. The Publicity Act provides that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative." 765 ILCS 1075/30 (a). Defendants contend that they were provided with written consent by Trudeau to use his identity and that Defendants' representations regarding Trudeau were all accurate.

#### 1. Written Consent

Defendants argue that they obtained written consent from Trudeau to use his name pursuant to the Distributor Agreement they entered into with Trudeau. However, the evidence pointed to by Plaintiffs indicates that the Distributor Agreement does not mention publicity rights. Rather the evidence pointed to by Plaintiffs indicates that the Distributor Agreement merely gave authorization to a distributor to use Trudeau's identity in advertising materials. Thus, according to the evidence referred to by Plaintiffs, the use of Trudeau's name and likeness by Defendants was far beyond the limited scope of the Distributor Agreement. Therefore, we cannot find that the Distributor Agreement is evidence of written consent by Trudeau for Defendants to use his name or likeness.

### 2. Accuracy of Representations

Defendants also argue that their representations concerning Trudeau's identity were accurate. The Publicity Act provides that it "does not apply to . . .[the] use of an individual's name in truthfully identifying the person as the author of a particular work or program or the performer in a particular performance . . . ." 765 ILCS 1075/35 (b)(3). However, in the instant action, Plaintiffs have presented evidence to support their position that Defendants artfully displayed Trudeau's name and likeness in their sales mediums to give the false impression to consumers that Trudeau was affiliated with Defendants and that the consumer was in effect buying Defendants' products from Trudeau. Therefore, we deny Defendants' motion for summary judgment on the Publicity Act claim (Count VI).

## III. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on Defendants' counterclaims of fraudulent misrepresentation, negligent misrepresentation, and acquiescence. Defendants' counterclaims are mainly based upon statements allegedly made by Trudeau to Lanoue on a cruise ship in 1996.

### A. Misrepresentation Counterclaims

Plaintiffs argue that they are entitled to prevail on the misrepresentation counterclaims. Under Illinois law, for a negligent misrepresentation claim a plaintiff

must prove: "(1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by defendant, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, (5) damage to the other party resulting from such reliance, and (6) a duty owed by defendant to plaintiff to communicate accurate information." *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 335 (7th Cir. 1999). In order to prove a fraudulent misrepresentation claim under Illinois law, a plaintiff must establish: "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Soules v. General Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980).

### 1. Whether Trudeau Made False Statements

Plaintiffs argue that Trudeau did not make any false statements to Lanoue. The misrepresentation counterclaims by Defendants are mainly based upon statements allegedly made by Trudeau to Lanoue, such as an alleged conversation that took place on a 1996 cruise. Although Plaintiffs have attempted to pick apart the evidence concerning such conversations, and put it in the light most favorable to Plaintiffs, there is no conclusive evidence that shows precisely what statements were made by Trudeau or, if in fact such statements were made. What was said between

15

Trudeau and Lanoue, if anything, on the cruise can only be determined by the trier of fact.

Plaintiffs also argue that any representations made by Trudeau were merely opinions as to the future, rather than statements of fact. A statement is deemed an opinion instead of a statement of fact "if it only expresses the speaker's belief, without certainty, as to the existence of a fact." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 816 (Ill. App. Ct. 1998). Also, if a party makes a statement that might be deemed an opinion, "but does not state it as the expression of the opinion of his own but as an affirmative fact material to the transaction, the statement clearly becomes an affirmation of the fact within the meaning of the rule against fraudulent misrepresentation." *Schrager v. North Community Bank*, 767 N.E.2d 376, 381 (Ill. App. Ct. 2002)(stating that "the general rule is that it is not 'the form of the statement which is important or controlling, but the sense in which it is reasonably understood"). In the instant action, Plaintiffs attempt to show that Trudeau made only opinions as to the future by portraying Trudeau's statements in the light most favorable to Plaintiffs. Defendants' version of the facts indicates that Trudeau made statements in such a manner that conveyed a fact rather than a mere opinion on Trudeau's part. For example, according to Defendants, Trudeau told Lanoue he could go ahead and "pioneer the internet" for Trudeau and his products and made statements to Lanoue such as "go for it" and "no problem" and to "just keep doing what he was doing." (D Ans. P SJ 7).

### 2. Inducement

The main basis of Defendants' misrepresentation claim was that Trudeau allegedly told Lanoue that Lanoue could "pioneer the internet" for Trudeau and his products and that Trudeau did not have any problem with Lanoue's use of his products or name. Defendants' theory of inducement is that Trudeau intentionally led Defendants to develop his products and name in order to reap the benefit of his work with the intent of prosecuting Defendants for using the name and products later if it suited Trudeau. Whether or not such an argument has merit is for the trier of fact to decide.

### 3. Reliance

Plaintiffs argue that Lanoue could not have reasonably relied upon the statements made by Trudeau. However, Plaintiffs admit that there was a lengthy business relationship between Trudeau and Lanoue. According to Defendants, the alleged statements were made during a cruise on which Trudeau and Lanoue enjoyed together. Finally, the alleged statements were not merely made by some low level employee of one of Trudeau's companies, rather, they were made by Trudeau himself. Therefore, we cannot conclude as a matter of law that there was not justifiable reliance on Defendants' part.

### 4. Economic Loss Doctrine

Plaintiffs argue that the economic loss doctrine bars Defendants' negligent misrepresentation counterclaim. Under the economic loss doctrine, a plaintiff pursuing a negligent misrepresentation claim is barred from recovering "economic loss" which is separate loss from "physical harm or property damage." *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 449 (Ill. 1982). However, an exception to the economic loss doctrine is that "economic loss is recoverable . . . where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Id.*

Defendants argue that they should be allowed to recover economic losses because Trudeau is in the business of supplying information for the guidance of others. Defendants' theory is that Trudeau, as part of his operations, necessarily supplies his distributors with information and guidance concerning the sale of his products. However, Defendants are merely attempting to stretch the facts in this case to fit the economic loss doctrine exception. Trudeau may in fact provide some guidance to his distributors and it can be said about virtually every business that the business offers some sort of information or guidance to others. However, Trudeau is not in the business of supplying information for the guidance of others. As the law makes clear, the reference to being in the business of supplying information for the guidance of others in *Moorman* is intended to refer to businesses that focus on such guidance such as surveyors and real estate brokers. *See, e.g., Rankow v. First Chicago Corp.*, 870 F.2d 356, 362 n.8 (7th Cir. 1989); *Rozny v. Marnul*, 250 N.E.2d 656, 658 (Ill. 1969). The undisputed evidence in this action clearly shows that

Trudeau was not in the business of supplying information for the guidance of others. Therefore, we grant Defendants' motion for summary judgment on the negligent misrepresentation counterclaim claim.

   B. Acquiescence Counterclaim

Plaintiffs argue that the acquiescence counterclaim should be pled as an affirmative defense. We agree. Acquiescence is an equitable and affirmative defense that is available as a defense to a trademark claim. *See, e.g., TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 885 (7th Cir. 1997). There is no proper basis for Defendants to plead the defense of acquiescence as a counterclaim. Therefore, we grant Plaintiffs' motion for summary judgment on the acquiescence counterclaim.

## CONCLUSION

Based on the foregoing analysis, we deny Defendants' motion for summary judgment in its entirety and grant Plaintiffs' motion to strike. We also deny Plaintiffs' motion for summary judgment on the fraudulent misrepresentation counterclaim and grant Plaintiffs' motion for summary judgment on the negligent misrepresentation counterclaim and the acquiescence counterclaim.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 2, 2006